LAW LIBRARY

NO. 29147

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

In the Matter of the Adoption of

A FEMALE CHILD, BORN ON OCTOBER 3, 2004, by P.N. and J.N., Petitioners-Appellants.

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(FC-A NO. 01-1-0029)

ORDER AFFIRMING IN PART AND VACATING IN PART THE FAMILY COURT OF THE FIFTH CIRCUIT'S APRIL 24, 2008 ORDER DISMISSING ADOPTION PROCEEDINGS AND VACATING THE MEMORANDUM OPINION AND JUDGMENT OF THE INTERMEDIATE COURT OF APPEALS
(By:  Moon, C.J., Nakayama, Acoba, Duffy, and Recktenwald, JJ.)

Petitioners-appellants P.N. and J.N. [hereinafter, Adoptive Parents] petition this court to review the Intermediate Court of Appeals' (ICA) October 28, 2009 judgment on appeal, entered pursuant to its September 11, 2009 memorandum opinion. Therein, the ICA affirmed the Family Court of the Fifth Circuit's[1] April 24, 2008 order dismissing the adoption proceeding of respondent-appellee Mother's female child (Child) by Adoptive Parents, and ordering return of Child to Mother.

On application, Adoptive Parents argue that the ICA gravely erred in affirming the family court's order dismissing the adoption proceedings and ordering return of the child to Mother because the family court "lacked jurisdiction to state that the [C]hild should be returned to [Mother]."  Adoptive

---

[1]  The Honorable Calvin Murashige presided.

-1-

Parents additionally argue that the family court should have stayed the adoption proceedings in the family court in light of the ongoing German adoption proceedings that were initiated by Adoptive Parents prior to the date that Mother filed her motion to dismiss. For the reasons discussed below, we hold that the family court lacked subject matter jurisdiction over the adoption proceedings pursuant to section 1911(a) of the Indian Child Welfare Act (ICWA).

In the instant case, Mother argued in her December 12, 2007 motion to dismiss that, under sections 1903(1)(ii) and (1)(iv) and 1911(a) of the ICWA, the Sioux Indian tribe to which she belongs has exclusive jurisdiction over the adoption of Child because: (1) the adoption proceeding "falls within the definition of a custody proceeding as set forth in section 1903(1)(ii) and (1)(iv)"; and, (2) Mother was domiciled within the Indian reservation during the pregnancy and at the time Child was born in Hawai'i and, thus, Child was also "domiciled within the reservation."

Section 1911(a) of the ICWA provides that "an Indian tribe shall have jurisdiction as to any [s]tate over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing [f]ederal law." In turn, sections 1903(1)(ii) and (1)(iv) provide that,

for purposes of this chapter, the term . . . "child custody proceeding" shall mean and include . . . "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship [and] "adoptive placement" . . . shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.

Inasmuch as the instant case involves the adoption of Child who is of Indian descent by Adoptive Parents, this case clearly involves an "action resulting in the termination of the parent-child relationship" and "the permanent placement of an Indian child for adoption." Hence, this constitutes a "child custody proceeding" within the meaning of the ICWA. As such, the only remaining inquiry pursuant to section 1911(a) is whether Child was "domiciled within the reservation" of the Sioux Indian tribe.

In <u>Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30 (1989), the United States Supreme Court considered the issue whether twin babies were "domiciled within the reservation" such that section 1911(a) of the ICWA applied and the tribal court had exclusive jurisdiction over the case. <u>Id.</u> at 42. In <u>Holyfield</u>, an Indian mother and father were domiciliaries of the Choctaw reservation in Mississippi during the mother's pregnancy. <u>Id.</u> at 37. At some point, the natural mother and father left the reservation, and the mother gave birth in a hospital 200 miles away from the reservation. <u>Id.</u> Shortly thereafter, the natural mother and father signed a consent to adoption and surrendered the twins to their adoptive parents. <u>Id.</u> at 37-38. As a result, the babies were never physically present on the Choctaw reservation. <u>Id.</u> at 38. Two months

later, the Choctaw Indian tribe moved in the chancery court to vacate the adoption decree on the grounds that, under the ICWA, exclusive jurisdiction over the adoption proceedings was vested in the tribal court. Id. The chancery court overruled the motion, reasoning that the babies were not "domiciled within the reservation." Id. at 39. The tribe appealed, and the Supreme Court of Mississippi affirmed, concluding that, because the babies were voluntarily surrendered outside of the reservation and the natural parents "went to great lengths" to ensure that the babies were born off the reservation, the babies were, at no time, domiciled on the reservation. Id.

The U.S. Supreme Court granted plenary review, stating that the meaning of "domicile" must be examined in terms of Congress' intent in legislating the ICWA. Id. at 41, 48. Addressing the domicile of young children, the Court concluded that,

> [s]ince most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents. In the case of an illegitimate child, that has traditionally meant the domicile of its mother. Under these principles, it is entirely logical that "on occasion, a child's domicile of origin will be in a place where the child has never been."

Id. at 48 (citations omitted). Looking to the facts of the case, the Court determined that, because "it is undisputed in this case that the domicile of the mother (as well as the father) has been, at all relevant times, on the Choctaw Reservation," id., "it is clear that at their birth the twin babies were also domiciled on the reservation, even though they themselves had never been

there." Id. at 48-49. Consequently, the Court held that "the Choctaw tribal court possessed exclusive jurisdiction pursuant to [section 1911(a) of the ICWA]" and vacated the adoption decree. Id. at 53.

We conclude that the instant case is clearly analogous to Holyfield because, Mother, like the natural parents in Holyfield, was domiciled on the reservation at all relevant times. Further, Child was surrendered to Adoptive Parents immediately after the birth and, like the babies in Holyfield, had never been physically on the reservation. Based on the Court's holding in Holyfield, we conclude that the Child was "domiciled within the reservation" at the time the adoption proceedings were commenced. Consequently, we hold that section 1911(a) applies in the instant case and that exclusive jurisdiction over the adoption of Child rests with the Indian tribal court. In other words, the family court lacked subject matter jurisdiction over the instant adoption proceedings.

However, the ICA, on direct appeal, reached the merits of the case and concluded that "the German family court decision refusing to return Child did not deprive the Hawai'i family court of jurisdiction to dismiss the adoption proceeding pursuant to 25 U.S.C. § 1913(c), which is the dispositive issue before us." In re Adoption of Female Child, b. 10/3/04, No. 29147, slip op. at 4-5 (Haw. Sept. 11, 2009) (mem.). In so concluding, the ICA clearly overlooked the fact that the family court lacked subject

matter jurisdiction over the instant adoption pursuant to section 1911(a) of the ICWA. As such, we hold that the ICA erred.

In light of the foregoing, we hold, based on the family court's lack of subject matter jurisdiction, that the dismissal of the adoption proceedings was the correct result. We, therefore, affirm that portion of the family court's April 24, 2008 order dismissing the adoption proceedings. We also hold that, without subject matter jurisdiction, the family court did not have the authority to order that Child be returned to her natural mother and, therefore, vacate that portion of the order so directing.[2] Additionally, we vacate the ICA's September 11, 2009 memorandum opinion and its October 28, 2009 judgment on appeal.

DATED: Honolulu, Hawai'i, March 4, 2010.

P. N. and J. N.,
petitioners-appellants,
appearing pro se

Emiko L. T. Meyers (of Legal
Aid Society of Hawai'i-Kaua'i),
for natural mother

---

[2] Because the family court lacked subject matter jurisdiction over the instant adoption proceedings, all of its orders in this case are void *ab initio* and, thus, do not have any effect. See In re Estate of Kam, 110 Hawai'i 8, 22, 129 P.3d 511, 525 (2006) (holding that orders entered by the family court when it did not have subject matter jurisdiction were void *ab initio* "and should not have been given any effect").